8813

DOBEY *ET AL.* v. WATSON.

(81 S. E. 658.)

CONTRACTS. BUILDING CONTRACTS. PAYMENTS. CONDITIONAL CERTIFICATES. NONSUIT.

A building contract providing for payments being made to the contractor on certificates of the architects, a nonsuit should be granted, in an action by the contractor for money certified by the architects to be due, their letter to him accompanying the certificate, given before it was due under the contract, providing, "this certificate is

given with the understanding that you are to let W. (the owner) have immediate possession of the house," and he not having given immediate possession, but for weeks kept and refused to give up the keys.

Before BOWMAN, J., Lexington, February, 1913. Reversed.

Action by W. F. Dobey and James C. Dobey, copartners, under the firm name of W. F. Dobey & Son, against Mrs. P. B. Watson, on a building contract. The pleadings were as follows:

The plaintiffs, complaining of the defendant, allege:

1st. That the defendant is a citizen and resident in the county and State aforesaid.

2d. That on the 4th day of March, 1911, the plaintiffs and the defendant entered into a written agreement whereby the plaintiffs were to build and erect for the defendant a certain dwelling house upon terms and conditions named in agreement, a copy of which said agreement the defendant now has, so plaintiffs are informed, believe and allege.

3d. That among other things the said contract provided that the defendant pay to the plaintiffs certain sums of money in current funds for the building and erection of said dwelling house upon the certificates which were to be issued by the architects named in said contract, to wit: Shand & LaFaye; and it further provided that all payments should become due when the certificates for the same were issued, as aforesaid.

4th. "That subsequent to the making of said contract and while said building was in the course of construction, on the 26th day of September, 1911, the defendant by and through her husband and agent, P. B. Watson, agreed by and with plaintiffs in the presence of defendant's architect, Mr. G. E. Shand, to pay to the plaintiff the sum of seventeen hundred and fifty dollars upon a certificate which was to be issued by Shand & LaFaye, architects, and that plaintiffs were to give

defendant the possession of the house pending its comple-
tion, and it was further agreed that upon the final comple-
tion of dwelling the architects were to pass upon and adjust
all other claims that each might have against the other, and
plaintiffs did all that was required of them by said agree-
ment; and that pursuant to said agreement the said Shand
& LaFaye did issue a certificate payable to the plaintiffs by
the defendants for seventeen hundred and fifty ($1,750)
dollars, dated September 27, 1911, in form as follows:

$1,750.              Columbia, S. C., September 27, 1911.

To Mrs. P. B. Watson: W. F. Dobey & Son is entitled to
the          part       payment of one thousand seven hun-
dred and fifty 00-100 as per contract for erecting residence.
Shand & LaFaye, Engineer & Architects. Per George E.
LaFaye.    Amt. certificate $1,750.

5th. The said certificate was duly and promptly presented
to the defendant for payment, and notwithstanding her valid
agreement to pay said certificate, properly executed and pre-
sented for payment, she has failed and refused to pay the
same, and the plaintiffs are now entitled to receive of the
defendant the full and just sum of $1,750, together with
interest at the legal rate from the 27th day of September,
1911.

Wherefore, plaintiffs pray judgment against the defend-
ant in the sum of $1,750, and interest at the legal rate from
the 27th day of September, 1911, for the costs and disburse-
ments of this action, and for such other relief as may appear
to the Court to be just."

The defendant, through her attorney, Joseph L. Nettles,
answering the complaint in the above named cause,

As a first defense: 1. Admits the allegations of para-
graphs 1, 2 and 3.

2. Admits so much of paragraphs 4 and 5 as states that a
certificate was issued by Messrs. Shand & LaFaye, archi-

tects, in the terms as stated in the complaint, but denies that such certificate was issued in pursuance and under the terms of the contract entered into March 4, 1911; and alleges that if such certificate was issued under and in pursuance of the terms of the contract it was done mistakenly and wrongfully.

As a second defense: 1. Defendant alleges that on the 4th day of March, 1911, the plaintiffs and defendant entered into an agreement whereby plaintiffs were to build and erect for the defendant a certain dwelling house upon terms and conditions named in the agreement, a copy of which said agreement plaintiffs now have, so defendant is informed and believes.

2. That one of the stipulations contained in the said contract was that 15 per cent. of the money due by defendant to plaintiffs for work done on the said building should be withheld by defendant as owner, until the building was completely finished and the final certificate thereof given. That pursuant to such stipulation 15 per cent. of the money due plaintiffs were being withheld on September 26, 1911. That the work still being incomplete, up to that time, the architect had refused to issue further certificates to plaintiffs because of this stipulation. That on September 26, 1911, defendant had a great part of her household furniture in storage in neighbors' homes and in the depot of the town of Batesburg, county and State aforesaid, where the said building is located, and was very desirous of removing her furniture from said storing places and of storing the same in her own house on that day. That plaintiffs held the keys to the house and refused to allow defendant access to the house for the purpose of storing said goods. That in order to immediately get possession of the said dwelling, and to obviate further dealings with plaintiffs, defendant on September 26, 1911, entered into agreement with plaintiffs whereby plaintiffs agreed to give defendant possession of the said house on that day, and defendant agreed that in consideration of

this her claim for demurrage should cease on September 26, 1911, and that she would take over the house and complete the said work at her own expense, and would pay plaintiffs seventeen hundred and fifty ($1,750) dollars in full satisfaction of the contract entered into March 4, 1911, when the architect should issue a certificate therefor, as a final certificate under the said contract. That defendant was ready and willing to carry out her part of the said agreement, but that plaintiffs, in violation of their agreement, refused to allow defendant access to the said building on September 26, 1911, and thereby forced defendant to go to the extra trouble and expense of obtaining another building and storing her goods therein, and that on September 18, 1911, when plaintiffs did present a certificate for seventeen hundred and fifty ($1,750) dollars, it was not a final certificate, as the parties had agreed on, but purported to be only for a partial payment. That plaintiffs not having complied with the agreement of September 26, 1911, in two ways, viz., in not giving defendant possession on September 26, 1911, and by presenting a certificate that was not issued according to the terms of the said agreement of September 26, 1911, defendant refused to pay the certificate.

3. That defendant is and always has been ready and willing and anxious to carry out her part of the contract entered into March 4, 1911, and has frequently so expressed herself to plaintiffs, but that they continue to neglect and refuse to do so on their part.

As a third defense by way of counterclaim: 1. Defendant alleges that on the 4th day of March, 1911, plaintiffs and defendant entered into a written agreement whereby plaintiffs were to build and erect for defendant a certain dwelling house, upon the terms and conditions named in the agreement, a copy of which agreement plaintiffs now have, so defendant is informed and believes.

2. That among other things the said contract provided as follows:

"Art. VI. The contractors shall complete the several portions, and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, to wit: 'The whole work to be completed by August 1, 1911, and should the contractors fail to complete the work by that date they shall forfeit to the owner, by way of liquidated damages, five ($5) dollars for each and every day the work remains uncompleted."

3. That defendant has insisted and frequently demanded of plaintiffs that they comply with the terms of the said agreement, but that plaintiffs have neglected and refused to comply with the said agreement and failed to carry out its provisions in very material parts, so that defendant has been put to great trouble and expense and has been deprived of the benefits of a comfortable home; whereby she has been damaged in the sum of one thousand and sixty ($1,060) dollars.

Wherefore the defendant demands judgment, first, that the complaint be dismissed with the cost to the plaintiffs; second, that the defendant have judgment against the plaintiffs for the sum of one thousand and sixty ($1,060) dollars, and for the costs of this action.

The plaintiff served a reply to the counterclaim in the answer denying its allegations.

At the conclusion of the testimony defendant moved for a nonsuit of the plaintiffs' action, and the direction of a verdict in favor of defendant for $5 a day from August 1st to November 15th, the plaintiff and the witnesses having testified that the plaintiff kept the keys to the house on defendant's land for the purpose of forcing a payment by defendant, and she was thereby deprived of the use of her home until the keys were delivered to her, November 15; and such damages are called for by the contract of March 4, 1911.

Defendant's motions were refused, and the case submitted to the jury, who returned a verdict of $1,750 in favor of the

plaintiff, whereupon, in accordance with the verdict, a judgment was entered for plaintiff for said amounts and costs. From the rulings of the Court, the verdict, and the judgment entered thereupon the defendant appealed upon the following exceptions:

1. That his Honor erred in refusing defendant's motion for a nonsuit or direction of verdict at the close of plaintiff's testimony, said motion being on the following grounds:

(a) That the testimony produced by plaintiff showed conclusively that there was no consideration to support the alleged contract; and,

(b) That assuming that there was such consideration for said alleged agreement, the testimony produced by plaintiff showed conclusively that plaintiff was to perform his part prior to defendant performing hers, that plaintiff had refused to perform his part of said agreement at the proper time, and the plaintiff being in default the defendant had a right to repudiate the agreement, this being a breach *in limine,* and the defendant having also changed her position in the meantime; it being respectfully submitted that there was no evidence of any consideration upon which a contract giving a cause of action could be based; and even if there was the plaintiff had breached it prior to the time of defendant's duty to perform.

2. That his Honor erred in refusing to grant defendant's motion for a direction of verdict for liquidated damages of $5 per day from August 1 to September 26, it being respectfully submitted that such a motion was proper since the plaintiff himself and all the witnesses had admitted that the house was uncompleted on that date, and the contract having provided for such liquidated damages.

3. That his Honor erred in refusing to grant defendant's motion for a direction of verdict on the counterclaim for $5 per day liquidated damages from August 1 to November 15; the plaintiff and the witnesses having testified that the plaintiff kept the keys to the house built on defendant's land for

the purpose of forcing a payment by the defendant and she was thereby deprived of the use of her house until the keys were delivered to her, November 15; the contract having provided for such liquidated damages.

*Messrs. Welch, Nettles & Tobias*, for appellant, cite: *The alleged subsequent parol contract was without consideration:* 2 Spears 585, *697; 1 Strob. L. 329; 67 Am. Dec. 328; 1 E. D. Smith (N. Y.) 687, 689. *Performance of building contracts:* 6 Cyc. 53; 27 Mich. 312; 66 Wis. 326. *Liquidated damages for delay:* 5 Strob. 115; 67 S. C. 456; 22 Pac. 126.

*Messrs. Thurmond, Timmerman & Callison,* for respondents.

April 22, 1914.

The opinion of the Court was delivered by Mr. Justice Fraser.

The appellant desired to build a home and employed the respondent to do the work under a written contract. The payments were to be made on certificates signed by the architects. Under the terms of the contract, 15 per cent. was to be withheld until the contract was completed. Before the completion of the contract, while some small things remained undone, the plaintiffs wanted to get some of the 15 per cent. reserved. The architect refused to issue the certificate, unless the defendant consented. The respondents allege that the defendant did consent, and the architect issued a certificate for $1,750 as part payment. The case was tried before Judge Bowman. At the conclusion of the plaintiff's evidence the defendant moved for a nonsuit. This motion was refused.

There are several exceptions; but that which complains of the refusal to grant a nonsuit is the only one that need be

considered, inasmuch as that motion ought to have been granted.

The plaintiff admits that there was a written contract, and by the terms of that contract he was not entitled to the certificate sued on, and alleges a parol contract to pay the $1,750, and claims that the certificate must be paid under the parol contract. The defendant denies the parol contract, as set out by the plaintiff, and claims that, even if there was a parol contract, it cannot avail the plaintiff, because a written contract cannot be varied by parol.

There is much confusion in the testimony reported in the case; but there are two things that are clear. The letter of the architects, transmitting the certificate, contains the following: "This certificate is given with the understanding that you are to let Mrs. Watson have immediate possession of the house." It is also clear and undisputed that the plaintiffs did not "let Mrs. Watson have immediate possession of the house." It is true the plaintiffs' evidence shows that they made offer to let Mrs. Watson store some furniture in the house; but they kept the keys and refused for weeks to give them up.

There are several questions between the parties, and a final judgment in favor of either plaintiff or defendant, in an action like this, might work serious injustice to the other.

The judgment appealed from is reversed, and the nonsuit ordered.

CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE HYDRICK dissents.

MR. JUSTICE GAGE did not sit in this case.